UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                                                    Chapter 11

PEBWORTH PROPERTIES, LLC,                           Case No.  10-15951-PGH

Debtor.
_____/

**OBJECTION BY WELLS FARGO BANK, N.A. IN ITS CAPACITY AS TRUSTEE FOR THE REGISTERED CERTIFICATE HOLDERS OF MORGAN STANLEY CAPITAL I INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-IQ12 TO:**

**(I) DEBTOR'S EMERGENCY MOTION TO PAY MANAGEMENT FEE AND**

**(II) DEBTOR IN POSSESSION'S EMERGENCY MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL**

Wells Fargo Bank, N.A. ("**Wells**"), in its capacity as trustee for the registered certificate holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-IQ12 ("**Lenders**"), by and through its undersigned counsel, hereby object to (I) the Debtor's Emergency Motion to Pay Management Fee (the "**Fee Motion**") and (II) the Debtor in Possession's Emergency Motion for Authorization to Use Cash Collateral (the "**Cash Collateral Motion**", and together with the Fee Motion, the "**Motions**").  In support of this Objection, Wells respectfully states as follows:

**Preliminary Statement**

On March 10, 2010, the above captioned debtor and debtor-in-possession (the "**Debtor**") filed its petition for relief under Chapter 11 of the United States Bankruptcy Code.  The initial hearing on both the Fee Motion and the Cash Collateral Motion is set for 9:30 a.m. on March 12, 2010.  Wells makes its preliminary objections to both Motions on extremely shortened notice,

and fully reserves its right to raise any and all additional issues regarding the proposed relief requested in the Motions as well as to file any necessary supplemental pleadings.[1]

For the reasons set forth below, Wells believes that: (i) the Debtor has not, and cannot, show any legitimate basis for the payment of pre-petition amounts owing to affiliate Pebworth Properties, Inc. or the basis for almost $4,000 per month in management-related fees in the cash collateral budget, and therefore the Fee Motion should be denied; and (ii) absent Well's consent to the use of its security by the Debtor, the Debtor cannot use the cash collateral without proof that the Lenders' security interest is adequately protected, which showing the Debtor has not, and cannot, make.

## Background

1. On or about September 18, 2006, the Debtor executed and deliver the Amended and Restated Promissory Note (the "**Note**") in the principal amount of $6,525,000 (the "**Loan**"). The Note is secured, as acknowledged by the Debtor, by that certain Amended and Restated Mortgage, Security Agreement and Fixture Filing (the "**Mortgage**") and that certain Assignment of Leases and Rents ("**ALR**") with regard to the property located at 240 and 250 W. Indiantown Road, Jupiter, Florida (the "**Property**").

2. On May 15, 2009, Wells delivered to the Debtor written notice of default under the terms of the Loan, fully accelerated the balance of the Note and made demand for all Payments (as defined in the Mortgage).

3. On July 31, 2009, Wells filed a commercial mortgage foreclosure complaint (the "**Complaint**") against the Debtor and another defendant seeking, *inter alia*, damages in connection with the Debtor's default under the Loan and breach of the Note and other related

---

[1] Counsel for Wells did enter into negotiations with Debtor's counsel regarding a consensual agreed interim order for the use of cash collateral. However, as of filing of this Objection, the parties have been unable to reach agreement.

Loan Documents (as defined in the Complaint), and foreclosure of certain security interests granted to secure the Note.

4.  On or about August 25, 2009, the Debtor filed an Answer and Affirmative Defenses in response to the Complaint.

5.  Wells filed its Verified Motion for Appointment of Receiver on September 16, 2009, which, due to the Circuit Court's overwhelmed foreclosure docket, was not scheduled to be heard until April 23, 2010.[2]

6.  On November 20, 2009, Wells and the Debtor entered into the Stipulation Regarding Entry of Agreed Order Granting Plaintiff's Expedited Motion to Sequester Rents. Thereafter November 24, 2009 the Circuit Court entered the *Agreed Order Granting Plaintiff's Expedited Motion to Sequester Rents* (the "**Rents Order**"). A true and correct copy of the Rents Order is attached hereto as Exhibit A.

## Objections

**A.    The Fee Motion**

7.  The Debtor requests authority to pay its affiliate, Pebworth Properties, Inc., a pre-petition management fee that is apparently based on a contract between the parties. Specifically, the Debtor seeks to pay a total of $7,414.67 in pre-petition amounts owing to Pebworth Properties, Inc. The Debtor further seeks authority to continue to pay Pebworth Properties, Inc. the management fees that accrue during the course of this case, in accordance with the Real Estate Management Agreement (the "**Agreement**") that was executed on February 1, 2010[3].

---

[2] Is it likely that Wells will follow a motion to lift the automatic stay in this case and proceed with the foreclosure and/or receivership proceedings in the immediate future.

[3] The Debtor has subsequently included in its Exhibit Register as Exhibit D a Real Estate Management Agreement dated January 10, 2010, identified as a "Corrected Management Agreement."

8. First, the Debtor has articulated no grounds for payment of the pre-petition amounts to Pebworth Properties, Inc. in the Fee Motion. The Debtor suggests that payment to Pebworth Properties, Inc. is essential or Pebworth Properties, Inc. will not continue to manage the Property. However, Pebworth Properties, Inc. is contractually bound to continue to perform its management and leasing services. Until the Debtor rejects the Agreement or Pebworth Properties, Inc. obtains relief from stay to terminate the Agreement, Pebworth Properties, Inc. must continue to perform under the Agreement. If the Debtor is permitted to utilize cash collateral, then it will be able to satisfy the ongoing expenses of Pebworth Properties, Inc. However, there is no compelling reason to pay Pebworth Properties, Inc. simply on the basis of any outstanding pre-petition claim.

9. Second, the Debtor seems to vaguely suggested that 11 U.S.C. § 507(a)(4)(A) is applicable, but the Debtor's simple statement that it has no employees and the only "contractor" that it utilizes at all is Pebworth Properties, Inc. is certainly not sufficient to place any pre-petition amounts outstanding within the purview of § 507(a)(4)(A). Thus, the Debtor should not be permitted to make pre-petition payments to Pebworth Properties, Inc.

10. Finally, the Debtor states that it pays Pebworth Properties, Inc. a management fee of 5% of tenant rents received each month as well as lease commissions. However, under the Agreement, the Debtor apparently agreed to pay Pebworth Properties, Inc. only a flat $1,000 per month for its services as the managing and renting agent. It appears from the Debtor's Profit & Loss Budget Overview that it anticipates paying $2,916 per month in management fees and another $956 per month in lease commissions, for a total of almost $4,000 per month. Even if the Debtor is permitted to use cash collateral, the budget should reflect only the $1,000 per month set forth in the Agreement.

**B.    The Cash Collateral Motion**

    (i)    *The Net Rents Are Not Cash Collateral Under 11 U.S.C. § 363(a)*

11.    Pursuant to 11 U.S.C. §363(a), cash collateral is:

> Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to the security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363.

12.    In order for the rents generated by the Property to constitute cash collateral, the rent must qualify as property "in which the estate and an entity other than the estate have an interest . . . " *See In re Kingsport Ventures, L.P.,* 251 B. R. 841, 846 (Bankr. E.D. Tenn. 2000) (citing section 363(a)).  If the Debtor no longer has an interest in the rents, then they are not property of the estate and may not be used as cash collateral.  In this case, the Rents Order unequivocally provides that the Debtor was permitted to use the Rents (as defined therein) to pay the Necessary Expenses (as defined therein), and then turn over all Net Rents to Wells.  Wells would then be entitled to apply gross Rents less Necessary Expenses less deposits made into the insurance and tax escrow accounts to the outstanding loan balance (including all sums due thereunder), at its sole and absolute discretion.  *See* Rents Order ¶¶ 3 and 6.  As a result, the $69,000 in the Debtor's bank account that is referenced in the Cash Collateral Motion (the "**Pre-Petition Rent Monies**") are Net Rents under the Rents Order, and thus never became property of the Debtor's estate, or are, at the least, subject to an equitable or constructive lien.  Thus, the Debtor should not be permitted to utilize the Pre-Petition Rent Monies under any order allowing

the use of cash collateral. If necessary, Wells intends to file an action before this Court seeking judgment declaring that the Pre-Petition Rent Monies are not property of the Debtor's estate[4].

13. With regard to ongoing and future Rents collected post-petition, the Rent Order still provides that the Debtor assigned the Net Rents to Wells, and therefore the Net Rents are not property of the Debtor's estate. Thus, the Net Rents on a go-forward basis should not be considered cash collateral, as the Debtor has no interest in the Net Rents.

(ii) *The Debtor Cannot Provide Adequate Protection to the Lenders*

14. Without the consent of Wells to use the Lenders' Cash Collateral, including, *inter alia*, the Lenders' security interests and liens in the Property and the Rents, as well as all collateral set forth in Well's properly filed UCC financing statement (the "**Cash Collateral**"), the Debtor has the burden of proving that the Lenders' interests are adequately protected. *See* 11 U.S.C. § 363(e); *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.),* 727 F.2d 1017, 1019 (11th Cir. 1984); *In re Scottsdale Medical Pavilion*, 159 B.R. 295 (B.A.P. 9th Cir. 1993) (debtor has the burden of proving, as a prerequisite to being allowed to use a creditor's cash collateral, that the creditor's interest is adequately protected); *In re Cropper Co., Inc.,* 35 B.R. 625, 633 (Bankr. M.D. Ga. 1983) (holding that "before the Court may authorize the use of cash collateral, the debtor in possession must sustain the burden of proving that the entity holding an interest in the cash collateral is adequately protected."). The Lenders are entitled to adequate protection as a matter of right; a right protected by various sections of the Bankruptcy Code and the United States Constitution. *See, e.g.*, 11 U.S.C. §§ 361, 362, 363; *In re Townley*, 256 B.R. 697, 700 (Bankr. D.N.J. 2000) ("The right of a secured creditor to the value of its collateral is a property right protected by the Fifth Amendment. Before the plan is

---

[4] In fact, such Net Rents were retained by the Debtor in violation of the express terms of the Circuit Court's Rents Order.

confirmed that property right is protected by the requirement of Code section 361."); *Sumitomo Trust & Banking Co., Ltd. v. Holly's, Inc. (In re Holly's Inc.),* 140 B.R. 643, 686 (Bankr. W.D. Mich. 1992) (section 362(d)(a) serves to protect a secured creditor's Fifth Amendment rights).

15. The Eleventh Circuit Court of Appeals has held that in a contested cash collateral hearing the "guiding inquiry is whether [the secured creditor's] security interests are 'adequately protected' absent the additional protection that the cash collateral would provide. In determining whether a creditor's secured interests are [adequately] protected, there must be an individual determination of the value of that interest and whether a proposed use of cash collateral threatens that value." *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d at 1019.

16. Section 363 of the Bankruptcy Code, which governs a debtor's use of cash collateral, provides that the burden of proof is on the debtor-in-possession to show that a creditor's interest is adequately protected. 11 U.S.C. § 363(p). Though courts are split over the burden of proof that a debtor must carry under section 363, courts in the Eleventh Circuit have held that the proper burden of proof in a contested cash collateral hearing is the preponderance of the evidence standard. *See e.g. In re Glasstream Boats, Inc.,* 110 B.R. 611, 613 (Bankr. M.D. Ga. 1990) (stating that, with regard to the burden of proof that the debtor must carry under section 363, "the proper burden is preponderance of the evidence.").

17. Section 361 of the Bankruptcy Code provides parties with an explanation of what will satisfy the requirement of adequate protection. Essentially, the debtor must either make cash payments or provide additional or replacement liens to the lender, to the extent that the debtor's use of the cash collateral results in a decrease in the value of the lender's security interest. 11 U.S.C. § 361.

18. Further, to prevail at a preliminary hearing for the use of the cash collateral, the court may authorize the use of cash collateral "only if there is a reasonable likelihood that the trustee will prevail at the final hearing. . . ." 11 U.S.C. § 363(c)(3).

19. Here, absent a consensual final order, the Debtor has the burden of proving by a preponderance of the evidence that the value of the Lenders' interest is adequately protected. When determining the effectiveness of the Debtor's adequate protection, the court should consider the purpose of section 363(e), which is to provide the Lenders in value essentially what it bargained for. *See, In re Bohne*, 57 B.R. 461 (Bankr. D.N.D. 1985) (holding that an offer of adequate protection must, as nearly as possible, provide a creditor with the value of its bargained-for rights consistent with the concept of indubitable equivalence); *Glasstream*, 110 B.R. at 613 (stating that the proper test is "whether or not the debtor carries its burden to show that its use of cash collateral will not reduce the value of the creditor's interest in property without providing adequate protection -- the indubitable equivalent of the creditor's interest in the property"). Furthermore, absent Well's consent or the Debtor meeting its burden of proving that the Lenders are adequately protected, the use of cash collateral must be prohibited. *See, e.g., In re 680 Fifth Ave. Associates*, 154 B.R. 38 (Bankr. S.D.N.Y. 1993) (holding that where the debtors failed to prove that a creditor's security interest in cash collateral would be adequately protected that the payment of professional fees of the debtors' and official creditors committee's counsel out of cash collateral would not be permitted).

20. With regard to the difference between the Rents and the Net Rents, the Debtor has clearly acknowledged in the Cash Collateral Motion that the Lenders hold properly perfected first priority security interests in the Property and in the Rents. *See* Rent Order at ¶¶ 6,7. The Debtor further admits that it was not current with its payments owing under the Loan Documents

to the Lenders during the pre-petition period. The Debtor further asserts that the value of the Property is only fifty-four percent (54%) of the amount of the Note, thus clearly rendering the Lenders significantly undersecured.

21.     While Wells cannot quite understand the purpose behind this bankruptcy filing, one thing is very clear: the Debtor intends to fund this case entirely on the backs of the Lenders, without providing the Lenders with **any** adequate protection, as required by the Bankruptcy Code. Not only is the value of the Property itself continuing to decline, further reducing the Lender's security, but the Debtor seeks to utilize the Rents to fund its case; money that would otherwise offer additional security to the Lenders. The Bankruptcy Code certainly does not require the Lenders to suffer additional, substantial harm while the Debtor attempts to reorganize around a single asset that, in the view of Wells, would likely be better off in foreclosure or receivership.

22.     Wells does not believe that the Debtor can prove by a preponderance of the evidence that the Lenders' security interests are adequately protected. With apparent disregard for the requirements of the Bankruptcy Code, the Debtor simply states that "the Debtor has every intention of using a *portion* of its rent receivables to make payments to Wells" and that "some form of adequate protection payments will commence during the ninety (90) days from the filing of these Chapter 11 proceedings." *Cash Collateral Motion*, ¶ 14 (*emphasis added*).

23.     Not only has the Debtor *not* proven by a preponderance of the evidence that the value of the Lenders' security interests is adequately protected (in fact failing to offer any adequate protection whatsoever), but the Debtor fundamentally *cannot* adequately protect the value of the Lenders' security interest. This Debtor can never satisfy the requirements of 11 U.S.C. §§ 361 and 363 unless it has the consent of the Lenders. The Debtor has no unencumbered property with which to provide the Lenders with a replacement lien, and there is

no equity cushion to be drained until the Lenders risk a loss. Any Rent utilized by the Debtor and offered as adequate protection to the Lender is <u>from the Lenders' own cash collateral</u>. To the extent that the Debtor is prohibited from utilizing the Cash Collateral, the diminution of the Lenders' security will be lessened. Every *penny* of the Lenders' cash collateral that is used by the Debtor is diminishing the value of the Lenders' security interest, and forcing an unwilling lender to fund the Debtor's bankruptcy proceeding.

24. Because the Debtor has not offered any adequate protection to the Lenders, and will be unable to do so in a manner that satisfies the requirements of the Bankruptcy Code, the Debtor cannot satisfy the standard set forth in 11 U.S.C. § 363(c). And because the Debtor has no likelihood of success on the merits, this Court should deny the Cash Collateral Motion in its entirety.

25. Should this Court grant the Debtor the use of the Lenders' Cash Collateral on a final basis, Wells believes that it will be entitled to a superpriority administrative expense claim pursuant to 11 U.S.C. §§ 507(a)(2) and (b) and 503(b).

WHEREFORE, for the reasons set forth above, Wells respectfully requests that this Court (i) deny the Fee Motion with regard to the request to pay pre-petition amounts owing, and allow any post-petition amounts only in accordance with the Agreement (at $1,000 per month) and in accordance with any cash collateral order; (ii) deny the Cash Collateral Motion in its entirety;

and (iii) grant any other or further relief as deemed necessary by the Court.

Respectfully submitted,

DATED this 11th day of March, 2010.

s/ Traci H. Rollins
Traci H. Rollins, Esquire
Florida Bar No. 769071
SQUIRE, SANDERS & DEMPSEY, L.L.P.
1900 Phillips Point
777 South Flagler Drive
West Palm Beach, FL  33401
Tel:  (561) 650-7200
Fax: (561) 655-1509
trollins@ssd.com
Attorneys for Wells Fargo Bank, N.A., in its capacity as trustee for the registered certificate holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2006-IQ12

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth Local Rule 2090-1(A).

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 12, 2010, I electronically filed the foregoing pleading by using the Case Management/Electronic Case Filing ("CM/ECF") system which will send notice of electronic filing to all parties indicated on the electronic filing receipt, including those on the Debtor's service list.

s/ Traci H. Rollins
Traci H. Rollins, Esquire